**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**


**BECKLEY DIVISION**


HANSON AND MORGAN LIVESTOCK, INC.,

                    Plaintiff,

v.                                      CIVIL ACTION NO.  5:07-cv-00330

B4 CATTLE COMPANY, INC., and
BERT SMITH, IV,

                    Defendants.


**MEMORANDUM OPINION AND ORDER**


       This action arises out of alleged cattle dealings gone awry between Plaintiff Hanson and

Morgan Livestock, Inc., a West Virginia corporation, doing business as Greenbrier Valley Livestock

Market and Defendants B4 Cattle Company (B4 Cattle), a Virginia Corporation, and Bert Smith, a

resident of Tennessee, and the sole officer and shareholder of B4 Cattle.

       Currently pending before the Court is Bert Smith's Motion to Dismiss for Lack of Personal

Jurisdiction or in the Alternative for Transfer [Docket 21].[1]  For the reasons stated below, Smith's

motion is **DENIED**.

---

[1] The Court notes that Plaintiff's Motion for Judgment Order and Order Requiring Payment by B4
Cattle [Docket 36] is also pending, but has since been withdrawn.  (*See* Docket 38.)  Accordingly,
the Court **DENIES** that motion as moot.  Further, the magistrate judge will address Plaintiff's
Motion for Sanctions Regarding Discovery [Docket 43] and Plaintiff's Statement of Fees Associated
with Discovery Disputes [Docket 40].  This Court will address the parties' scheduling concerns in
a separate order.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff alleges that on several occasions Defendants B4 Cattle and Smith purchased cattle from Plaintiff at an auction in Lewisburg, West Virginia, by tendering checks to Plaintiff that were returned unpaid.  Thereafter, Defendants allegedly paid a portion of the debt, but $356,388.03 remained outstanding.  As a result, Plaintiff filed a five-count complaint on May 23, 2007.  Count I claims that Defendants, "as makers of the checks, are liable to . . . Plaintiff in the sum of $356,388.03, plus interest upon the amount of each check from the respective date of each . . . ." (Docket 1 at 3.)  Count II alleges that Defendants "are contractually liable to . . . Plaintiff in the sum of $356,388.03, representing the total outstanding purchase price of the cattle, plus interest."  (*Id*.) Count III is a fraud claim against Defendants.  In Count IV, Plaintiff contends that the corporate veil of B4 Cattle

> should be pierced and disregarded, and [Smith] is personally liable for the acts of [B4 Cattle] because he actively participated in the fraudulent acts alleged above, and because [B4 Cattle] was not adequately capitalized, and because there is such a unity of interest and ownership between [B4 Cattle] and [Smith] that their separate personalities no longer exist, and because an inequitable result will occur if the acts of the corporation alleged above are treated as those of the corporation alone.

(*Id*. at 4.)  Count V is a claim for punitive damages based on Defendants' alleged wanton, intentional, and arbitrary conduct.

On September 24, 2007, Smith filed a motion to dismiss for lack of personal jurisdiction. Alternatively, should his motion to dismiss be denied, Smith moves the Court to transfer venue pursuant to 28 U.S.C. § 1406(a).  In support of his motion to dismiss, Smith, a Tennessee resident, argues that because "[h]e did not enter West Virginia[,]" "did not communicate orally or in writing with [Plaintiff] in West Virginia to make these specific sales[,]" and because "he does not do business generally in West Virginia[,]" this Court lacks personal jurisdiction over him.  (Docket 22

2

at 1.)  He contends that the act of simply signing the checks on behalf of B4 Cattle does not establish that he personally availed himself to jurisdiction in this state.  Rather, according to Smith, the only way for Plaintiff to establish jurisdiction over him is by "veil-piercing" and because Plaintiff's allegations are conclusory, they are insufficient.

Plaintiff responds by suggesting that Smith's reliance on the so-called "fiduciary shield" doctrine has been rejected by federal courts.  Further, Plaintiff posits that, absent an evidentiary hearing, it has made a *prima facie* showing sufficient to confer jurisdiction on Smith because the allegations in the Complaint, taken in the light most favorable to it, establish that Smith is personally liable for the fraudulent acts he engaged in when he (1) purchased cattle in West Virginia; (2) wrote and then sent bad checks to West Virginia for the cattle; (3) and misrepresented his ability to pay for the cattle.  Accompanying its response, Plaintiff proffered an affidavit from Dean Hanson, who is an officer and shareholder of the corporation.[2]  In the affidavit, Mr. Hanson states that while in West Virginia he had numerous telephone conversations with Smith regarding the cattle sales during which they discussed issues such as upcoming sale dates, the types and numbers of cattle anticipated to be sold, recent prices for cattle in the market, how the purchased cattle would be loaded on trucks, the scheduling of transportation of the cattle, and the terms of payment.  (Docket 23-2 at 1.) Furthermore, he states that the sales were made in West Virginia and that the checks were mailed by Smith to West Virginia.  (*Id.*)

Plaintiff also disputes Smith's argument that its allegations with respect to Count IV, the piercing claim, are conclusory.  Plaintiff contends that the record and allegations are sufficient to

---

[2]  In deciding whether personal jurisdiction exists, a district court is allowed to consider matters outside the pleadings "without converting a motion to dismiss into a motion for summary judgment." *Charter Commc'ns VI, LLC v. Eleazer*, 398 F. Supp. 2d 502, 505 (S.D. W. Va. 2005) (Faber, C.J.).

pierce the corporate veil for jurisdictional purposes.  Plaintiff points out that Count IV alleges that

B4 Cattle was not adequately capitalized, that there was a unity of interest and ownership between

the corporation and Smith, and that an inequitable result would occur if the acts of B4 Cattle are

treated as those of the corporation alone.  In support of its argument, Plaintiff cites to its Exhibit B,

which, according to Plaintiff, shows that "the Secretary of Agriculture has already decided that . .

. Smith is the alter ego of B4 Cattle[]."[3]  (Docket 23 at 7 n.1.)

After thorough consideration of the issues raised, the Court rejects Smith's arguments and

**DENIES** his motion.

## II.  MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A.      Standard of Review

"When a non-resident defendant files a motion pursuant to Rule 12(b)(2) of the Federal

Rules of Civil Procedure challenging the court's power to exercise personal jurisdiction, 'the

jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately

to prove the existence of a ground for jurisdiction by a preponderance of the evidence.'" *Felman

Prod. v. Bannai*, 517 F. Supp. 2d 824, 827-28 (S.D. W. Va. 2007) (Chambers, J.) (quoting *Combs

v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989)).  "When a district court decides a pretrial personal

jurisdiction motion without conducting an evidentiary hearing, plaintiff need only make a *prima

facie* showing of personal jurisdiction." *Eleazer*, 398 F. Supp. 2d at 504.  "In considering a challenge

on such a record, the court must construe all relevant pleading allegations in the light most favorable

to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of

---

[3]  Exhibit B was initially omitted from Plaintiff's response.  At the Court's request, the record has
since been supplemented.  (*See* Docket 48.)

4

jurisdiction." *Combs*, 886 F.2d at 676. "The burden plaintiff bears to establish the court's jurisdiction normally is not a heavy one, particularly where the court chooses to rule on the issue without an evidentiary hearing." *Clark v. Milam*, 830 F. Supp. 316, 319 (S.D. W. Va. 1993) (Haden, J.). In fact, "[m]ere allegations of personal jurisdiction are sufficient for a party to make a *prima facie* showing." *Id.* (citing *Dowless v. Warren-Rupp Houdailles, Inc.*, 800 F.2d 1305, 1307 (4th Cir. 1986)).

B.      *Applicable Substantive Law*

"A federal court presented with a challenge to its personal jurisdiction over an out-of-state defendant faces two questions: one, whether there is statutory authority for the exercise of jurisdiction under the laws of the state in which it sits, [] and two, whether the statute that confers jurisdiction meets federal constitutional standards of due process[.]" *Hardy v. Pioneer Parachute Co.*, 531 F.2d 193, 195 (4th Cir. 1976) (citations omitted).

"Because the West Virginia long-arm statute is coextensive with the full reach of due process, *see Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 525 (4th Cir. 1987), it is unnecessary . . . to go through the normal two-step formula for determining the existence of personal jurisdiction . . . ." *Owens-Illinois, Inc. v. Rapid Am. Corp.* (*In re Celotex Corp.*), 124 F.3d 619, 627-628 (4th Cir. 1997) (citations omitted). "Rather, the statutory inquiry necessarily merges with the Constitutional inquiry." *Id.* As such, in this case, the Court's inquiry centers on whether exercising personal jurisdiction over Smith is consistent with the Due Process of the United States Constitution. *See id.*

For jurisdiction to be constitutionally permissible, a defendant must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions

5

of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

>    1.    *Minimum Contacts*

"Minimum contacts exist where the defendant 'purposefully directs' its activities toward the residents of the forum." *Ellicott Mach. Corp. v. John Holland Party, Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). "This 'purposeful' requirement rests on the basic premise that traditional notions of fair play and substantial justice are offended by requiring a non-resident to defend itself in a forum when the non-resident never purposefully availed itself of the privilege of conducting activities within the forum, thus never invoking the benefits and protections of its laws." *Owens-Illinois, Inc.*, 124 F.3d at 628.

In determining a defendant's minimum contacts, the plaintiff must show that either general or specific jurisdiction exists. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002). "To establish general jurisdiction over the defendant, the defendant's activities in the State must have been 'continuous and systematic,' a more demanding standard than is necessary for establishing specific jurisdiction." *Id.* at 712. Here, Plaintiff does not argue that Smith had systematic and continuous contacts with the State of West Virginia. Therefore, the inquiry is whether Smith has sufficient contacts with West Virginia such that this Court can exercise specific jurisdiction over him.

To determine whether specific jurisdiction exists, the Court must "consider (1) the extent to which the defendant 'purposefully availed' [himself] of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Id.* The Court

6

must look at whether the defendant's contacts with the forum state are substantial enough that he "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Importantly, due process does not require that the defendant be physically present in the forum. *Burger King Corp.*, 471 U.S. at 476 ("Jurisdiction in these circumstances may not be avoided merely because the defendant did not physically enter the forum State."). "Instead, a defendant purposefully directs [his] activities toward the forum 'where the contacts proximately result from actions by the defendant himself that create a "substantial connection" with the forum[.]'" *City Nat'l Bank v. Clark*, No. 2:05-0675, 2006 U.S. Dist. LEXIS 9503, at *9 (S.D. W. Va. Feb. 23, 2006) (Copenhaver, J.) (quoting *Burger King Corp.*, 471 U.S. at 475).

In dealing with a tort allegation, "a court may exercise specific personal jurisdiction over a nonresident defendant acting outside of the forum when the defendant has intentionally directed his tortious conduct toward the forum state, knowing that that conduct would cause harm to a forum resident." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397-98 (4th Cir. 2003) (discussing the holding in *Calder v. Jones*, 465 U.S. 783 (1984)). This is referred to as the "effects test" and "is typically construed to require that the plaintiff establish that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." *Id.* at 398 n.7 (citing *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1988)).

2.      *Fair Play and Substantial Justice*

If the Court determines that the nonresident has minimum contacts, then it must also determine whether the exercise of jurisdiction offends "'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken*, 311 U.S. at 463).  Fairness is determined by balancing several factors, including (1) burden on the defendant; (2) "the forum State's interest in adjudicating the dispute[;]" (3) the plaintiff's interest in obtaining relief; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies;" and (5) "the shared interest of the several States in furthering fundamental substantive social policies." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (citations omitted).

C.      *Analysis*

In Count III of its Complaint, Plaintiff alleges that Smith is liable to it for fraud and provides an affidavit accompanying its brief to support the assertion that Smith directed his tortious conduct toward Plaintiff who Smith knew was located in West Virginia.  According to Plaintiff, Smith's contacts with West Virginia include purchasing cattle in West Virginia by writing and sending bad checks to West Virginia and misrepresenting his ability to pay for the cattle.  These misrepresentations were allegedly made to Plaintiff's corporate officer through phone calls while the officer was in West Virginia.[4]  Taken together, the allegations and evidence satisfy the "effects test" and support a finding that Smith (1) committed an intentional tort; (2) that Plaintiff felt the

---

[4]  Although Smith disputes Plaintiff's allegations, the Court must construe the evidence and allegations in the light most favorable to Plaintiff.  *See Combs*, 886 F.2d at 676.

8

"brunt of the harm" in West Virginia; and (3) that Smith expressly aimed his tortious conduct at West Virginia.  *See Carefirst*, 334 F.3d at 398 n.7.

The first element is met because fraud is an intentional tort.  *Baker v. Wheat First Sec.*, 643 F. Supp. 1420, 1431 (S.D. W. Va. 1986) (Haden, C.J.) ("Battery and fraud are both intentional torts.").  Next, Plaintiff, a West Virginia corporation, was injured financially in West Virginia and therefore felt the brunt of the harm in West Virginia such that it was the focal point of Smith's fraud.

Finally, with respect to whether Smith aimed his tortious conduct at West Virginia, by allegedly sending bad checks to West Virginia, and by allegedly misrepresenting to Plaintiff that he had sufficient assets to pay for the cattle, Smith intended to inflict foreseeable injury upon Plaintiff such that he could reasonably expect (1) to answer to Plaintiff in West Virginia on claims arising out of those contacts, and (2) to avail himself of the benefits and protections of West Virginia laws.  *See Vishay Intertech., Inc. v. Delta Int'l Corp.*, 696 F.2d 1062, 1068 (4th Cir. 1982).

In *Vishay*, the Fourth Circuit determined that the defendant had minimum contacts with the forum state when the defendant wrote three letters and initiated five telephone calls, at most, to the plaintiff in the forum state.  *Id.*  The court focused on those contacts and the fact that they were essential facts in the plaintiff's tort claims (slander, unfair business practices, tortious interference with contract, and abuse of process).  *Id.* at 1063, 1069.  Similarly, in this case, as noted above, Smith's contacts with West Virginia, in the form of the alleged bad checks and fraudulent misrepresentations, are essential facts to Plaintiff's fraud claims.  *See id.* (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957)).

Other courts have noted the distinction between "*untargeted* negligence, which will not amount to purposeful availment, from intentional and allegedly tortious acts *expressly aimed* at the

9

forum." *Karsten Mfg. Corp. v. Golf Ass'n*, 728 F. Supp. 1429, 1433 (D. Ariz. 1990).  For example, in *Karsten*, the court found that jurisdiction was not proper because any injury that the defendants might have caused was not "targeted" at the forum state, but rather was uniformly felt worldwide. *Id.* at 1433-34.  Distinguishing *Karsten*, the Hawaii Supreme Court held in *Shaw v. N. Am. Title Co.*, 876 P.2d 1291, 1300 (Haw. 1994), that jurisdiction was proper in the forum state when the defendant "targeted" the plaintiff in the forum state by allegedly committing fraud and misrepresentation against the plaintiff knowing that plaintiff would be injured in the forum state.  *See also Mill v. McMann*, 89 F. Supp. 2d 564, 567 (D.N.J. 2000) (citing *Vishay* in support of the statement "a defendant who directs a fraudulent communication to a plaintiff located in New Jersey has established sufficient contacts with the states to justify personal jurisdiction[]").

The Court finds the analysis in these cases persuasive.  Here, as was the case in *Shaw* and *Vishay*, Smith allegedly directed his fraudulent behavior toward West Virginia and "targeted" Plaintiff in West Virginia.  As such, he could have "reasonably anticipate[d] being haled into court" here.  *World-Wide Volkswagon Corp.*, 444 U.S. at 297.  Therefore, because Smith purposefully directed his activities toward West Virginia, all three parts of the "effects" test are met and minimum contacts exist.

Moreover, the exercise of personal jurisdiction over Smith is reasonable and does not offend "traditional notions of fair play and substantial justice" because the balance of applicable factors in determining fairness does not violate due process.  *Int'l Shoe Co.*, 326 U.S. at 316.  First, there is no inherent unfair burden placed upon Smith by litigating this case in West Virginia.  Smith is a resident of Tennessee, which is only a few hours from West Virginia.  Furthermore, as a part of his motion to dismiss, Smith alternatively requested that this case be transferred to the Western District

of Virginia.  If the Western District of Virginia does not place an unconstitutional burden on a Tennessee resident, then neither does this Court.

Next, West Virginia has an interest in adjudicating this dispute because Plaintiff is a West Virginia corporation that seeks relief under West Virginia law for cattle sold in West Virginia. Additionally, this Court's adjudication of Plaintiff's dispute with both Smith and B4 Cattle in its entirety is the most efficient resolution to this case.  Finally, no other state has an interest in furthering any fundamental substantive social policy involved in this case.  For these reasons, the exercise of personal jurisdiction over Smith is reasonable and does not offend "traditional notions of fair play and substantial justice."  *Int'l Shoe Co.*, 326 U.S. at 316.

Defendant argues that any acts he allegedly committed that might subject him to personal jurisdiction in West Virginia were done in his corporate capacity and therefore insufficient to give him sufficient minimum contacts with the state of West Virginia.  This is commonly referred to as the "fiduciary shield doctrine."

"The fiduciary shield doctrine states that 'the acts of a corporate officer or employee taken in his corporate capacity within the jurisdiction generally do not form the predicate for jurisdiction over him in his individual capacity.'" *Springs Indus. v. Gasson*, 923 F. Supp. 823, 825 (D.S.C. 1996) (quoting *Bulova Watch Co. v. K. Hattori & Co., Ltd.*, 508 F. Supp. 1322, 1347 (E.D.N.Y. 1981)). However, the Fourth Circuit has held that "the fiduciary shield doctrine is not available where the state's long-arm statute is coextensive with the full reach of due process."  *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 525 (4th Cir. 1987) (citation and quotation marks omitted) (affirming a district court's ruling that the fiduciary shield doctrine was not available to the defendants because West Virginia's long-arm statute is coextensive with due process).  Accordingly,

because West Virginia's long-arm statute is coextensive with due process, Smith's argument that he is not subject to personal jurisdiction in this Court simply because his actions were done while acting on behalf of the corporation is without merit.

Additionally, Smith's argument that this Court lacks jurisdiction over him because he cannot be held personally liable on the checks he signed for the corporation is unpersuasive.  Plaintiff has alleged a fraud claim against Smith, and it is well-settled in West Virginia that "while an officer of a corporation is in no way personally liable for corporate torts solely on account of his corporate position, where the officer actually participates in or otherwise sanctions the tortious acts, personal liability may lie."  *Airlines Reporting Corp. v. Ellison (In re Ellison)*, 296 F.3d 266, 271 (4th Cir. 2002) (citing *Bowling v. Ansted Chrysler-Plymouth-Dodge, Inc.*, 425 S.E.2d 144, 149 (W. Va. 1992)).  In *Bowling*, the West Virginia Supreme Court of Appeals stated in syllabus point three, "[a]n officer of a corporation may be personally liable for the tortious acts of the corporation, including fraud, if the officer participated in, approved of, sanctioned, or ratified such acts."  425 S.E.2d at 144.  Thus, Smith may be personally liable if Plaintiff's allegations of fraud prove true.

Based on the foregoing, this Court has personal jurisdiction over Smith because he has the requisite minimum contacts with West Virginia such that the maintenance of this action does not offend traditional notions of fair play and substantial justice.  *Int'l Shoe Co.*, 326 U.S. at 316.

D.    *Alter ego*

Even if the Court could not constitutionally exercise personal jurisdiction over Smith based on the actions he undertook individually, the Court would still have jurisdiction over him because Plaintiff has set forth more than conclusory allegations of Smith being an alter ego of B4 Cattle.

12

"[F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." *Patin v. Thoroughbred Power Boats*, 294 F.3d 640, 653 (5th Cir. 2002); *Quebecor World (USA), Inc. v. Harsha Assocs.*, 455 F. Supp. 2d 236, 244 (W.D.N.Y. 2006) (quoting *Miramax Film Corp. v. Abraham*, No. 01-CV-5202, 2003 U.S. Dist. LEXIS 21346, at *7 (S.D.N.Y. Nov. 25, 2003)) ("If personal jurisdiction exists over the dominating entity, then it exists over its corporate alter egos.").

However, courts have also determined that conclusory allegations are not sufficient to establish personal jurisdiction over an alter ego. *See Harsha Assocs., LLC*, 455 F. Supp. 2d at 244; *Television Events & Mktg. v. Amcon Distrib. Co.*, 416 F. Supp. 2d 948, 962-63 (D. Haw. 2006); *Kemper v. Saline Lectronics*, 348 F. Supp. 2d 897, 901-02 (N.D. Ohio 2004). For example, in *Pyrotek, Inc. v. Motionmaster, Inc.*, No. 1:04-cv-00549, 2006 U.S. Dist. LEXIS 57007, at *18 (M.D.N.C. Feb. 22, 2006), the court found that the following language could not survive a motion to dismiss and consequently did not give the court personal jurisdiction over the sole shareholder of a corporation based on an alter ego theory:

> Defendant [Corporation] is a mere alter ego of Defendant [Officer]. Defendant [Officer] has complete and exclusive control of Defendant [Corporation]. Defendant [Officer] has used Defendant [Corporation] as an instrument for his personal benefit and has used the Defendant [Corporation] in order to undertake improper actions that benefited (sic) Defendant [Officer] and damaged the Plaintiff. In addition, the Plaintiff alleges and believes that Defendant [Officer] has failed to follow corporate formalities with regard to Defendant [Corporation].

Importantly, the court found that these allegations failed to state a claim under California law because there was no allegation of the second element required for veil-piercing: that failure to

disregard the corporation would result in fraud or injustice.[5]  *Id.*  Thus, because the plaintiff did not claim that the corporation was undercapitalized or unable to pay a judgment if one was entered against it, the court granted the individual defendant's motion to dismiss and as a result found that it did not have jurisdiction over the defendant.  *Id.*

To the contrary, in *RAE Sys. Inc. v. TSA Sys., Ltd.*, No. C 04-2030, 2005 U.S. Dist. LEXIS 39450, at *7-12 (N.D. Cal. June 24, 2005), the court, also applying California law, found that allegations of alter ego liability were sufficient when the plaintiff alleged facts to support a finding that there was both a unity of interest and ownership between the two entities and that the disregard of the corporate form would result in injustice.  *See also Mieuli v. Debartolo*, No. C-00-3225, 2001 U.S. Dist. LEXIS 22518 (N.D. Cal. Jan. 16, 2001) (Rule 12(b)(6) motion denied where plaintiff alleged unity of interest and undercapitalization of the corporate entity); *FRB v. HK Sys.*, No. C-95-1190, 1997 U.S. Dist. LEXIS 5573 (N.D. Cal. Apr. 23, 1997) (Rule 12(b)(6) motion to dismiss denied where plaintiff alleged that the defendant parent corporation "dominated and controlled" the subsidiary, that the parent "disregarded the corporate form of the subsidiary," and that the subsidiary was so inadequately capitalized that its capitalization was "illusory."); *Ado Fin. AG v. McDonnell Douglas Corp.*, 931 F. Supp. 711, 713 (C.D. Cal., 1996) (denying Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction where plaintiff made a *prima facie* showing of alter ego liability).

Similarly, in *Kinetic Instruments, Inc. v. Lares*, 802 F. Supp. 976, 986 (S.D.N.Y. 1992), the court noted that although the plaintiff did not make "any allegations concerning inadequate

---

[5]  To pierce the corporate veil under California law, a plaintiff must show (1) that there is such unity of interest and ownership that the separate personalities of the two corporations no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice.  *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996) (citing *Watson v. Commonwealth Ins. Co.*, 63 P.2d 295, 298 (Cal. 1936)).

14

capitalization of [the corporation], intermingling of the corporation's finances with those of the defendant or lack of corporate formalities[,]" the plaintiff alleged sufficient facts to make a *prima facie* showing that the corporate entity should be disregarded for jurisdictional purposes when piercing the veil would prevent fraud and injustice. The court was able to make that finding because under New York law, "[t]he corporate veil may be pierced either when the defendant has used the corporation to perpetrate fraud, *or* simply when he has dominated the corporation for his personal business." *Id.* (emphasis added).

Thus, these cases stand for the proposition that so long as a plaintiff can state a claim for veil piercing under applicable state law, allegations of alter ego are not conclusory and can serve as the basis for personal jurisdiction.[6] Accordingly, in this case, if Plaintiff has pled facts sufficient to state a cognizable claim for veil piercing against Smith under West Virginia law, then the Court can attribute B4 Cattle's contacts with West Virginia to Smith for jurisdictional purposes.[7]

Under West Virginia law, to "pierce the corporate veil" and hold a shareholder actively participating in the operation of the business personally liable, there is normally a two-prong test. First, there must be such unity of interest and ownership that the separate personalities of the corporation and of the individual shareholder(s) no longer exist (a disregard of formalities requirement) and, second, an inequitable result would occur if the acts are treated as those of the corporation alone (a fairness requirement). *Laya v. Erin Homes, Inc.*, 352 S.E.2d 93, 98-99 (W. Va. 1986) (discussing what is required to pierce the corporate veil only in a contract case, but noting that

---

[6] It should be noted that other courts have actually held "that the alter ego test for attribution of contacts, *i.e.*, personal jurisdiction, is less stringent than that for liability." *Stuart v. Spademan*, 772 F.2d 1185, 1198 n.12 (5th Cir. 1985).

[7] Neither party disputes that this Court has personal jurisdiction over B4 Cattle.

it may be easier to do in a tort case); *Mills v. USA Mobile Commc'ns*, 438 S.E.2d 1, 5 (W. Va. 1993)

(noting that "courts are more reluctant to disregard the corporate entity when the dispute involves

a contract as opposed to a tort[]").

In *Laya*, the leading West Virginia case on "piercing the corporate veil," the court "listed

nineteen factors to be considered in deciding whether to pierce the corporate veil and noted that this

list was not complete."[8] *St. Peter v. Ampak-Div. of Gatewood Prods.*, 484 S.E.2d 481, 489 (W. Va.

---

[8] Those factors are:

> (1) commingling of funds and other assets of the corporation with those of the individual shareholders;
> (2) diversion of the corporation's funds or assets to noncorporate uses (to the personal uses of the corporation's shareholders);
> (3) failure to maintain the corporate formalities necessary for the issuance of or subscription to the corporation's stock, such as formal approval of the stock issue by the board of directors;
> (4) an individual shareholder representing to persons outside the corporation that he or she is personally liable for the debts or other obligations of the corporation;
> (5) failure to maintain corporate minutes or adequate corporate records;
> (6) identical equitable ownership in two entities;
> (7) identity of the directors and officers of two entities who are responsible for supervision and management (a partnership or sole proprietorship and a corporation owned and managed by the same parties);
> (8) failure to adequately capitalize a corporation for the reasonable risks of the corporate undertaking;
> (9) absence of separately held corporate assets;
> (10) use of a corporation as a mere shell or conduit to operate a single venture or some particular aspect of the business of an individual or another corporation;
> (11) sole ownership of all the stock by one individual or members of a single family;
> (12) use of the same office or business location by the corporation and its individual shareholder(s);
> (13) employment of the same employees or attorney by the corporation and its shareholder(s);
> (14) concealment or misrepresentation of the identity of the ownership, management or financial interests in the corporation, and concealment of personal business activities of the shareholders (sole shareholders do not reveal the association with a corporation, which makes loans to them without adequate security);

(continued...)

1997).  Likewise, in *S. Elec. Supply Co. v. Raleigh County Nat'l Bank*, 320 S.E.2d 515, 523 (W. Va. 1984), a tort case, the court held: "Decisions to look beyond, inside and through corporate facades must be made case-by-case, with particular attention to factual details."

Here, Plaintiff has made allegations sufficient to find that Smith is an alter ego of B4 Cattle. Specifically, Plaintiff alleges that Smith should be held personally liable for the acts of B4 Cattle because he actively participated in fraud, because B4 Cattle was not adequately capitalized, because Smith acted in such a way that shows that the separate personalities no longer existed between him and B4 Cattle, and because an inequitable result will occur if the acts of the corporation are treated as those of the corporation alone.  Additionally, according to Plaintiff, Exhibit B shows that "the Secretary of Agriculture has already decided that Bert Smith, IV, is the alter ego of B4 Cattle Company, Inc."  (Docket 23 at 7 n.1.)  Although the Department has made such a finding, it is not binding on this Court.  However, the decision can be construed as evidence in support of Plaintiff's allegations that Smith issued checks in payment for livestock purchases that were returned unpaid because of a lack of sufficient funds in his account -- in other words inadequate capitalization -- and

---

[8](...continued)
      (15) disregard of legal formalities and failure to maintain proper arm's length relationships among related entities;
      (16) use of a corporate entity as a conduit to procure labor, services or merchandise for another person or entity;
      (17) diversion of corporate assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors, or the manipulation of assets and liabilities between entities to concentrate the assets in one and the liabilities in another;
      (18) contracting by the corporation with another person with the intent to avoid the risk of nonperformance by use of the corporate entity; or the use of a corporation as a subterfuge for illegal transactions;
      (19) the formation and use of the corporation to assume the existing liabilities of another person or entity.

*Laya*, 352 S.E.2d at 98-99.

that Smith failed to pay for a total of $604,636.37 in livestock purchases -- proof that an inequitable result would occur if the acts are treated as those of the corporation alone.  (Docket 48-2 at 4.)  This evidence supports Plaintiff's allegations in paragraph sixteen of its Complaint,[9] and is more than conclusory allegations of alter ego.

The cases cited by Smith are distinguishable from the instant case because Plaintiff has alleged facts and come forward with evidence sufficient to support a finding that Smith is an alter ego of B4 Cattle under West Virginia law.  For example, in *Harsha Assocs.*, a case cited by Smith, the complaint simply alleged in conclusory form that an individual defendant was "legally responsible for the obligations of one or more of the defendants[.]" 455 F. Supp. 2d at 245. Likewise, as discussed above, in *Pyrotek, Inc.*, the court found that the plaintiff's allegations of alter ego were conclusory when the plaintiff did not allege facts sufficient to state a cause of action under California law.  However, in *Amcon Distrib. Co.*, like in the instant case, the court found that the plaintiff's allegations were more than conclusory allegations and stated a claim under the applicable state law where there were allegations of commingled funds, inadequate capitalization, and the use of one corporation as a mere shell for another.  416 F. Supp. 2d at 963-64.

---

[9]  Specifically, Count IV of the Complaint alleges:

> The corporate veil of B4 Cattle Company, Inc. should be pierced and disregarded, and Bert Smith, IV is personally liable for the acts of B4 Cattle Company, Inc. because he actively participated in the fraudulent acts alleged above, and because B4 Cattle Company, Inc. was not adequately capitalized, and because there is such a unity of interest and ownership between B4 Cattle Company, Inc. and Bert Smith, IV, that their separate personalities no longer exist, and because an inequitable result will occur if the acts of the corporation alleged above are treated as those of the corporation alone.

(Compl. ¶ 16.)

Thus, because Plaintiff's allegations state a claim for veil piercing under West Virginia law, Plaintiff has made a *prima facie* showing that Smith, as the sole-shareholder of B4 Cattle, is an alter ego of the corporation, thereby also subjecting him to personal jurisdiction in this Court for that reason.

Accordingly, Smith's motion to dismiss is **DENIED**.[10]

### III.  MOTION TO TRANSFER

With respect to Smith's motion to transfer the case to either the Middle District of Tennessee or the Western District of Virginia pursuant to 28 U.S.C. § 1406(a), the Court denies his request.

Although Smith cites 28 U.S.C. § 1406(a) in support of his motion for transfer, it appears he is actually requesting transfer under 28 U.S.C. § 1404(a).  In his motion, he states: "If this Court chooses not to dismiss Mr. Smith for lack of personal jurisdiction, it can and should transfer this case . . . pursuant to 28 U.S.C. § 1406."  (Docket 22 at 5.)  Under § 1406(a), however, transfer is only appropriate if this Court does not have personal jurisdiction over Smith and would otherwise dismiss him.  That statute states: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any

---

[10]  Despite the denial of Smith's motion to dismiss for lack of personal jurisdiction, the Court notes that these arguments may be raised again later in the proceedings.  *See Selman v. Am. Sports Underwriters, Inc.*, 697 F. Supp. 225, 237 (W.D. Va. 1988) (denying the defendants' motions to dismiss for lack of *in personam* jurisdiction but stating that "[i]f further discovery reveals that [the corporation] was neither the alter-ego nor the agent of these defendants in their dealings with the plaintiff, the court will reconsider its present ruling and entertain a renewed motion to dismiss for lack of *in personam* jurisdiction over these defendants[]"); *Ado Fin., AG v. McDonnell Douglas Corp.*, 931 F. Supp. 711, 717 (C.D. Cal. 1996) ("If the Court denies a Rule 12(b)(2) motion because a *prima facie* case has been shown, the movant can nevertheless put the opposing party to its proof by continuing to contest personal jurisdiction, either at a pretrial evidentiary hearing or at the trial itself.").

district or division in which it could have been brought."  Typically, a § 1406(a) motion is brought

by a plaintiff in order to avoid having to refile a case in a different district, possibly after the statute

of limitations has run.  *See Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 277 (4th Cir. 2005)

("Section 1406(a) has been construed to permit transfers where personal jurisdiction is *lacking* in

the transferor court, but would be available in an alternative forum.").  Accordingly, because

personal jurisdiction is not lacking, § 1406(a) is inapplicable.

Rather, pursuant to 28 U.S.C. § 1404(a), the Court *may*, for the convenience of the parties

and in the interests of justice, transfer the case to any other district or division where the action

might have been brought.  28 U.S.C. § 1404(a).  A transfer under § 1404(a) is dependent upon the

weighing "a number of case-specific factors."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29

(1988).

> Factors commonly considered in ruling on a transfer motion include: (1) ease of access to sources of proof; (2) the convenience of parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the possibility of a view; (6) the interest in having local controversies decided at home; and (7) the interests of justice.

*AFA Enters., Inc. v. Am. States Ins. Co.*, 842 F. Supp. 902, 909 (S.D. W. Va. 1994) (Haden, J.).

Smith has failed to show how any of these factors would weigh in favor of transferring this

case to either of his requested districts.  Accordingly, his motion to transfer is **DENIED**.

*IV. CONCLUSION*

For the reasons stated above, the Court **DENIES** Smith's Motion to Dismiss for Lack of

Personal Jurisdiction or in the Alternative for Transfer [Docket 21], and **DENIES AS MOOT**

Plaintiff's Motion for Judgment Order and Order Requiring Payment by the Defendant, B4 Cattle

Company, Inc. [Docket 36].  The Court **DIRECTS** the Clerk to send a copy of this Memorandum

Opinion and Order to counsel of record and any unrepresented party.

                                    ENTER:        August 27, 2008

                                      _____

                                      THOMAS E. JOHNSTON
                                      UNITED STATES DISTRICT JUDGE