IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

HANSON AND MORGAN LIVESTOCK, INC.,

          Plaintiff,

v.                                      CIVIL ACTION NO.  5:07-cv-00330

B4 CATTLE COMPANY, INC., and
BERT SMITH, IV,

          Defendants.

MEMORANDUM OPINION AND ORDER

This action arises out of a dispute regarding cattle dealings between Plaintiff Hanson and

Morgan Livestock, Inc., a West Virginia corporation, doing business as Greenbrier Valley Livestock

Market, and Defendants B4 Cattle Company (B4 Cattle), a Virginia Corporation, and Bert Smith,

who is a resident of Tennessee and the sole officer and shareholder of B4 Cattle.  Pending before

the Court are the following motions: (1) Plaintiff's Motion for Default Judgment for Failure of the

Defendant to Attend his Own Deposition [Docket 54], (2) Defendant Bert Smith's Motion to Extend

Time to File Answer [Docket 61],[1] (3) Motion of the Plaintiff for Summary Judgment [Docket 63],

---

[1]   Defendant Bert Smith's responsive pleading was due on September 11, 2008, but he did not file
his answer until September 21, 2008, because he anticipated filing bankruptcy.  (Docket 61 ¶ 5.)
The Court **FINDS** that the delay is short, and Plaintiff will not be prejudiced by the Court granting
this motion.  Therefore, Defendant Bert Smith's Motion to Extend Time to File Answer [Docket 61]
is **GRANTED**.

(4) Defendants' Motion for Summary Judgment [Docket 65],[2] and Plaintiff's Motion in Limine [Docket 69].

### I.  FACTS AND PROCEDURAL HISTORY

Plaintiff alleges that on several occasions checks tendered by B4 Cattle in exchange for cattle were returned unpaid.  Thereafter, B4 Cattle allegedly paid a portion of the debt, but $356,388.03 remained outstanding.  As a result, Plaintiff filed a five-count complaint in this Court on May 23, 2007.[3]  Plaintiff's complaint alleges that (1) Defendants, as makers of the checks, are liable to Plaintiff; (2) Defendants are contractually liable for the purchase price of the cattle; (3) Defendants are liable for fraud; (4) the corporate veil of B4 Cattle should be pierced, and Smith and B4 Cattle should be treated as one entity; and (5) Defendants are liable to Plaintiff for punitive damages. (Docket 1.)    On September 24, 2007, Smith filed a motion to dismiss for lack of personal jurisdiction, which was denied on August 27, 2008.  (Docket 56.)

### II.  PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Plaintiff claims that though Smith had rescheduled his deposition once before, Smith filed a motion to continue the deposition and extend deadlines on August 13, 2008 – the day before his deposition was scheduled to occur.  (Docket 55 at 1.)  On the same day, Smith's counsel notified Plaintiff's counsel via telephone that Smith would not be attending the scheduled deposition.  (*Id*.) In its motion for default judgment, Plaintiff asserts that because Smith failed to attend the deposition, the Court should impose sanctions.  Specifically, Plaintiff requests the following: (1) an order

---

[2]  The Court heard oral argument on Defendant's motion on January 9, 2009.

[3]  This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000.

imposing discovery sanctions against Smith for not appearing at his scheduled deposition, (2) an award to Plaintiff of its costs and attorney's fees expended in bringing the present motion, (3) a default judgment in favor of the Plaintiff in the amount of $356,388.03, plus costs, attorney's fees, and prejudgment and post-judgment statutory interest, and (4) that the matter be set for trial regarding the fraud claims and request for punitive damages.  (Docket 54 at 2.)

In his motion to continue deposition and extend deadlines, Smith asserted that he was unable to attend his deposition because after it was scheduled, he and B4 Cattle were served with lawsuits in Texas and Tennessee.  (Docket 53.)  Smith claimed that absent a settlement in those cases, he anticipated that he would have to file for Chapter 11 protection, and the present case would be stayed.  (*Id.*)  This Court granted Smith's motion to continue deposition and extend deadline in its First Amended Scheduling Order entered on September 3, 2008.  (Docket 57.)

A.    *Applicable Law*

If a party refuses to appear at a deposition, Fed. R. Civ. P. 37(d) provides that the Court may make such orders as are just, including imposing sanctions under Rule 37(b)(2)(A)(i)-(vi).  These sanctions include, among other things, the striking of pleadings, dismissal of claims, and the granting of a default judgment.  Fed. R. Civ. P. 37(b)(2)(A).  In determining whether sanctions are warranted, the Court must consider a four-part test.  *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs. Inc.*, 872 F.2d 88, 92 (4th Cir.1989) (citing *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 503-04 (4th Cir.1977).  That test examines (1) whether the non-complying party acted in bad faith, (2) the amount of prejudice, (3) the need for deterrence, and (4) the effectiveness of less drastic sanctions.  *Id.*

*B.      Analysis*

Plaintiff's motion for default judgment was filed on August 22, 2008, after the time Smith filed a motion to continue deposition and extend deadlines on August 13, 2008, (Docket 53),but before this Court granted Smith's motion on September 3, 2008, (Docket 57).  The Court granted Smith's motion because Smith showed good cause for not attending the deposition: Smith was involved in settlement negotiations in other lawsuits, which could have resulted in Smith filing for bankruptcy.  In the First Amended Scheduling Order, depositions were to be completed by September 19, 2008.  (Docket 57.)  A Second Amended Notice to Take Deposition of Smith was filed on September 17, 2008.  (Docket 58.)  Plaintiff's Motion for Summary Judgment indicates that Smith's deposition was taken on September 24, 2008.  (Docket 63-4.)

In applying the four-part test set forth in *Mut. Fed. Sav. & Loan*, the Court **FINDS** that none of the sanctions requested by Plaintiff are warranted.  First, as evident in his motion to continue deposition and extend deadlines, Smith was not acting in bad faith; instead he was delayed by other actions, the resolution of which could have impacted the case at hand.  Moreover, he appropriately sought relief from the Court.  Second, Plaintiff is not prejudiced by Smith's failure to appear for his deposition because Plaintiff has deposed Smith.  In addition, the Court **FINDS** that there is no need for deterrence in this case, and the effectiveness of less drastic sanctions need not be addressed as no sanctions are necessary.  Accordingly, Plaintiff's Motion for Default Judgment for Failure of the Defendant to Attend his Own Deposition [Docket 54] is **DENIED**.

### III.  MOTIONS FOR SUMMARY JUDGMENT

A.      *Summary Judgment Standard*

Summary judgment is proper where the pleadings, depositions, and affidavits in the record show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If factual issues exist that properly can be resolved only by a trier of fact because they may reasonably be resolved in favor of either party, summary judgment is inappropriate.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986); *see also Pulliam Inv. Co., Inc. v. Cameo Props*., 810 F.2d 1282, 1286 (4th Cir. 1987).  The moving party bears the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.  *Celotex Corp.*, 477 U.S. at 322-23.  When determining whether there is an issue for trial, the Court must view all evidence in the light most favorable to the non-moving party.  *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123 (4th Cir. 1990).  Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  *Celotex*, 477 U.S. at 322.

> [T]he inquiry involved in a ruling on a motion for summary judgment . . . necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits.  If the defendant in a run-of-the mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself . . . whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

*Liberty Lobby*, 477 U.S. at 252.  If an action is based in fraud, the judge must decide whether the moving party has "brought forth sufficient facts to meet the 'clear and convincing' standard of proof required to support an allegation of fraud under West Virginia law."  *Schleicher v. TA Operating Corp.*, 2008 WL 111338 at *4 (N. D. W.Va. Jan. 9, 2008).

"[T]he failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993).  However, "the moving party must still show that the uncontroverted facts entitle the party to 'a judgment as a matter of law.'" *Id.*  "Thus, the court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Id.*

### B.        Plaintiff's Motion for Summary Judgment

Plaintiff seeks summary judgment on B4 Cattle's counterclaim.  The counterclaim alleges that due to Plaintiff's negligent treatment of the purchased cattle, B4 Cattle "suffered financial losses because of the injuries and death sustained by the cattle." (Docket 26 at 7 ¶¶ 4-5.)  Smith admits that he cannot state, to a reasonable degree of certainty, what loss he has incurred as a result of the allegedly negligent care of the cattle.  (Docket 63-4.)   Also, Defendants admit that there are no documents evidencing their negligence claim.  (Docket 63 ¶ 2.)  Furthermore, Plaintiff's invoice states, "We are not responsible in case of sickness or death [of the cattle], we act as agents only." (Docket 63-2.)

First, Plaintiff contends that because the invoices disclosed that Plaintiff was only an agent, Plaintiff is not personally liable for any claim based on the condition of the cattle.  (Docket 64 at 2-3.)  Second, Plaintiff claims that because Smith admitted that he had no evidence to show damages to a reasonable degree of certainty, and because no documents regarding damages have been produced, B4 Cattle's counterclaim should be dismissed.  (Docket 64 at 3.)

As evidenced by its failure to respond to Plaintiff's motion for summary judgment, B4 Cattle does not dispute receiving the invoice filed by Plaintiff.  (Docket 63-2.)  The portion of the invoice

6

filed by Plaintiff includes four pages that clearly state that Plaintiff was acting as an agent in transporting the cattle and that Plaintiff disclaimed liability for the well-being of the cattle.  (*Id.*) Plaintiff correctly cites to *Hurricane Milling Co. v. Steel & Payne Co.*, 99 S.E. 490 (W. Va. 1919), which stands for the proposition that a broker is absolved from personal liability of a commodity in question if the vendee knew, before consummation of the contract, that the broker was selling the property of another.  No pleadings, depositions, or affidavits in the record dispute the existence of the invoice or Defendants' knowledge of the invoice prior to the consummation of the contract. Thus, the Court **FINDS** that the invoice disclosed the Plaintiff's status as a broker to Defendants prior to the consummation of the contract.  Therefore, by applying well-settled West Virginia law to the undisputed facts in this case, the Court **FINDS** that Plaintiff is absolved from liability for the death of any cattle in question.

Furthermore, as Plaintiff argues, the pleadings show that Defendants have failed to make a showing of damages.  Specifically, in his deposition, Smith admitted that he could not prove damages to a reasonable degree of certainty.  (Docket 63-4.)  B4 Cattle does not clearly assert whether its counterclaim is based in contract or tort.  However, under either theory, compensable damages must be proven to a reasonable degree of certainty.  *See Ky. Fried Chicken of Morgantown, Inc. v. Sellaro,* 214 S.E.2d 823, 828 (W. Va. 1975); *see also*, *Commonwealth Tire Co. v. Tri-State Tire Co.*, 193 S.E.2d 544, 550 (W. Va. 1972) (stating that there is a "requisite standard of reasonable certainty in determining the elements of recoverable damages in an action for breach of a contract or for a tort.").  Therefore, B4 Cattle has also failed to show damages.

As such, Plaintiff has met its burden of showing that there is no genuine issue of material fact.  In addition, no reasonable jury could find by a preponderance of the evidence that B4 Cattle

is entitled to a verdict.  Therefore, Plaintiff it is entitled to judgment as a matter of law on this issue.

Accordingly, Plaintiff's Motion for Summary Judgment [Docket 63] is **GRANTED**, and

Defendants' counterclaim is **DISMISSED.**[4]

> C.       *Defendants' Motion for Summary Judgment*

Defendants seek summary judgment on Counts Three, Four, and Five of Plaintiff's

complaint.[5]  In Count Three, Plaintiff's complaint alleges fraudulent misrepresentation.  Specifically,

Plaintiff's complaint states "[a]t the time the Defendants took delivery of the cattle . . . the

Defendants represented to the Plaintiff that the Plaintiff would be paid for the cattle and that the

Defendants had sufficient assets to pay for the cattle." (Docket 1 ¶ 14.)  Plaintiff asserts that when

making such representations, Defendants knew or should have known that there would be no

payment.  (*Id.*)  Plaintiff maintains that based on these representations, Plaintiff shipped the cattle

and suffered damages when Defendants failed to pay.[6]  (*Id.*)  These allegations match the elements

---

[4]  Plaintiff's motion in limine requested the Court to exclude evidence or argument in support of Defendants' counterclaim.  Because that counterclaim has been dismissed, Plaintiff's Motions in Limine [Docket 69] is **DENIED** as moot.

[5]  The Court notes that it received Plaintiff's Response to the Defendants' Motion for Summary Judgment [Docket 73] on January 6, 2009, which was due on October 23, 2008.  Though Plaintiff's memorandum was over two months late, the Court will consider the arguments made therein.

[6]  Likely because Plaintiff's complaint resembled an action for negligent misrepresentation, Defendants responded by arguing that one of the elements for negligent misrepresentation is missing:  Defendants argued that "Count Three fails because Plaintiff cannot prove reliance on the bad checks [tendered by Defendants] or that Mr. Smith made any actionable representations." (Docket 66 at 1.)

required for a fraudulent misrepresentation action.[7]  However, in its response to Defendants' motion

for summary judgment and at oral argument, Plaintiff indicated a different fraud theory.

Plaintiff alleged that Defendants had committed fraud by purchasing cattle without intending

to pay for them.  (Docket 73 at 1).  Under West Virginia law, "where one buys property with [the]

intention not to pay for it, it is a fraudulent purchase, whether he make false representations or not."

*Miller v. White*, 33 S.E. 332, 334 (W. Va. 1899).  To prove an action for fraud under this theory, a

seller must present clear and convincing evidence that the purchaser did not intend to pay when he

made the purchase.  *See id.*  However, such intent "may be inferred by the jury from the

circumstances and conduct of the [purchaser], not only in respect to the sale in question, but in other

contemporaneous transactions."  *Id.*  Therefore, this Court must determine if Plaintiff has presented

"clear and convincing" evidence by which a jury could determine that Defendants did not intend to

pay Plaintiff when the parties entered into the agreements.

The facts supporting this claim are not contested.  Defendants attached excerpts of the

deposition of Walter Hanson, president of Plaintiff corporation, to their motion for summary

judgment.  (Docket 65-2.)  In his deposition, Hanson claimed that Smith contacted him via telephone

prior to each sale and misrepresented his intention to pay for the cattle in question upon their receipt.

(*Id.* at 41.)  When asked why Hanson claimed that Smith did not intend to pay at the time he made

the representation, Hanson replied "If everything he had told me had been true, then the money

would have been there."  (*Id*. at 42.)  Though that statement alone might indicate that this is a case

---

[7] Under West Virginia law, a party alleging fraudulent misrepresentation must prove "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it."  *Horton v. Tyree*, 139 S.E. 737, 738 (W.Va. 1927).

of mere broken promises, more information has been presented.  In particular, the Court notes that Defendants entered into four agreements for purchase of cattle on three different dates and sent a total of nine checks, six of which were returned unpaid.

In addition, Hanson's deposition provided numerous occasions when Smith provided excuses for why B4 Cattle's checks were not clearing and assurances that Plaintiff would be paid.  Hanson claims that Smith "truly had me convinced that these were banking issues, that it wasn't a lack of funds, it wasn't a lack of money, that the money was there, that it was just his own banking problems that he had to sort out in order to get everything cleared up." (*Id.* at 18.)  Hanson also asserts that Smith represented that "he had direct drafts coming from feedlots, that he would get the checks covered and get it rectified, get it taken care of." (*Id.* at 19.)  Furthermore, Hanson claims that Smith explained that

> he was having trouble getting the bank, because of the volume of money that's going through that account, he was buying cattle at seven or eight different sales, they were buying a couple hundred thousand dollars per sale and that the bank was just uncomfortable handling that kind of money based on the bank drafts that he was depositing from the feed yards, and that they were just trying to slow him down.

(*Id.*)  Hanson also claims that Smith told him that he was solvent and had "as many as 30,000 or 40,000 cattle in feed at any given time during the time [Plaintiff was] doing business with him." (*Id.* at 40.)  Finally, Hanson claims that, at one point, Smith informed him that Smith had sent payment via FedEx and assured him that he would have a check by Monday morning.  When the check did not arrive by Monday morning, Smith told Hanson that because he sent the check through regular delivery, it would arrive the next day.  After three more days had passed, Smith allegedly claimed that the check was lost and gave Hanson a false tracking number.

Combined, the assertions that Smith made to Hanson could lead a reasonable jury to believe

that Smith was being dishonest with Hanson regarding his intention to pay for the cattle in question.

Viewing the evidence in the light most favorable to Plaintiff, a jury could infer that at the time

Defendants entered into the contracts with Plaintiff, they did not intend to pay for at least some of

the cattle they purchased.  The jury could make this inference based on clear and convincing

evidence, including the number of unpaid contracts entered, the statements Smith made to Hanson,

and Defendants' ultimate inability to pay.  Therefore, Defendants' motion for summary judgment

on Count Three is **DENIED**.

Defendants also request summary judgment on Counts Four[8] and Five[9] "to the same extent

that Count Three fails." (Docket 66 at 3-4.)  Because the Court found that Count Three does not fail,

it accordingly **DENIES** Defendants' motion for summary judgment on Counts Four and Five.

*V. CONCLUSION*

In summary, (1) Plaintiff's Motion for Default Judgment for Failure of the Defendant to

Attend his Own Deposition [Docket 54]is **DENIED**; (2) Defendant Bert Smith's Motion to Extend

---

[8] Count Four deals with piercing the corporate veil.  Defendants claims that "[b]oth Counts Three and Four are based on the acts of Mr. Smith.  If Count Three fails, then Count Four fails as well." (Docket 66 at 3.)  The record reveals considerable confusion about the applicability of the veil piercing claim in Count Four to Counts One through Three.  For example, Defendants argued, or at least assumed, in their motion for summary judgment that Count Four only applied to, and therefore should fail with, Count Three.  However, at the argument on January 9, 2009, defense counsel at one point argued that Count Three would not require veil piercing because it is alleged against both Defendants.  Plaintiff, on the other hand, asserts that Count Four applies to all three and points out that summary judgment was only sought as to Count Three, as well as Counts Four and Five.  The Court is satisfied that summary judgment is not appropriate and will address this issue in the trial context.

[9] Count Five is for punitive damages.  Defendant asserts that "[i]f the independent tort claim fails, then the claim for punitive damages goes with it, and the Plaintiff is limited to compensatory damages on the remaining contract claims."  (Docket 66 at 4.)

Time to File Answer [Docket 61] is **GRANTED**; (3) Motion of the Plaintiff for Summary Judgment

[Docket 63] is **GRANTED**; (4) Defendants' Motion for Summary Judgment [Docket 65] is

**DENIED**; and (5) Plaintiff's Motion in Limine [Docket 69] is **DENIED** as moot.   A separate

Judgment Order will enter this day implementing the rulings contained herein.

      **IT IS SO ORDERED.**

      The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any

unrepresented party.

            ENTER:      January 13, 2009

            _____

            THOMAS E. JOHNSTON
            UNITED STATES DISTRICT JUDGE